IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FINANCIALRIGHT CLAIMS
GMBH,

               Petitioner,

      v.

BURFORD CAPITAL LLC and
GERMAN LITIGATION
SOLUTIONS LLC,

           Respondents.

Miscellaneous Action
No. 26-184-CFC

---

Bindu A. Palapura, Jacqueline A. Rogers, and Nicole K. Pedi, POTTER
ANDERSON & CORROON LLP, Wilmington, Delaware; Jeffrey A. Rosenthal,
Lina Bensman, and Patrick C. Swiber, CLEARY GOTTLIEB STEEN &
HAMILTON LLP, New York, New York

      *Counsel for Petitioner*

Anne Shea Gaza and Samantha G. Wilson, YOUNG CONAWAY STARGATT &
TAYLOR, LLP, Wilmington, Delaware; Derek T. Ho, Travis G. Edwards, Eliana
Margo Pfeffer, and Minsuk Han, KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C., Washington, D.C.; Edward P. Boyle and Allison M.
Cunneen, VENABLE LLP, New York, New York

      *Counsel for Respondents*

**<u>MEMORANDUM OPINION</u>**

May 12, 2026
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

I have two motions pending before me. The first motion was filed by Petitioner financialright claims GmbH (Financialright). Financialright seeks by the motion an order compelling Respondents Burford Capital LLC and German Litigation Solutions LLC (collectively, Burford) to comply with subpoenas issued by this Court on November 18, 2024 for documents and deposition testimony for use in connection with a lawsuit filed by Financialright in Germany. *See* D.I. 2 at 1. I issued the Order granting Financialright leave to serve the four subpoenas in question in a related and now closed *ex parte* action (the Section 1782 Action) upon Financialright's application under 28 U.S.C. § 1782. *In re financialright claims GmbH*, No. 23-1481, D.I. 51 (granting Financialright leave to serve the subpoenas filed as D.I. 28-1 through 28-6); *see also* § 1782(a) (providing that "upon the application of any interested person" a district court "may order" "a person [who] resides or is found" in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal").

The second motion was filed by Burford and nonparty Burford German Funding LLC (Burford Germany, and together with Burford, the Burford entities) in response to Financialright's motion. D.I. 15. Because Burford Germany is not a

party to this action and did not seek leave under Federal Rule of Civil Procedure 24 to intervene as a party, and I see no reason to add it as a party on my own, I will the treat the motion as Burford's motion. *See* Fed. R. Civ. P. 24 (requiring and permitting nonparties to intervene in certain circumstances, but only "[o]n timely motion"); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Burford seeks by its motion "an Order . . . compelling arbitration of Petitioner financialright claims GmbH's application for discovery under 28 U.S.C. § 1782, and staying any further court proceedings on that application, including Petitioner's pending Motion to Compel Respondents Burford Capital LLC's and German Litigation Solutions LLC's Compliance with Subpoenas." D.I. 15 at 1. Burford argues that I must stay this action and send the closed Section 1782 Action and Financialright's motion before me in this action to an arbitrator because of an arbitration agreement in a Capital Provision Agreement (CPA) between Financialright and Burford Germany. *See* D.I. 16 at 1, 6–7; D.I. 20 at 3–4.

## I.

Before getting to the merits of the pending motions and to understand why I am writing in May 2026 about subpoenas issued in November 2024, a few words need to be said about the protracted and convoluted history that led to this action. In the words of Financialright's counsel, "[I]t's a mess in terms of how we've

2

gotten here." *financialright claims GmbH v. Burford German Funding LLC*, No. 24-929, 12.10.24 Hr'g Tr. (docketed as D.I. 31) 18:22–23.

The mess traces its roots to January 30, 2024. On that date, Financialright filed in the Section 1782 Action a motion titled "Unopposed Motion for Stay to Allow Parties Time to Discuss Potential Resolution." No. 23-1481, D.I. 12. Keep in mind that the Section 1782 Action was an *ex parte* action. Financialright had sought in that action an order under § 1782 permitting it to serve subpoenas on the Burford entities. No. 23-1481, D.I. 2-1 at 1. There was only one party to the action—Financialright. But instead of waiting until after I had issued an order granting the straightforward application and Financialright had served the requested subpoenas on the Burford entities, Financialright asked me in its "Unopposed Motion" to stand down and "stay[] [the action] unless and until [Financialright] notifies the Court that discussions of a potential resolution of the Application have been unsuccessful." No. 23-1481, D.I. 12-1 at 1. I granted the motion and signed that day Financialright's proposed order staying the case. No. 23-1481, D.I. 13.

Four months passed. On May 31, 2024, Financialright "notifie[d] [me] that the stay imposed by [my] January 30, 2024 Order is hereby ended, as discussions of a potential resolution of [its] application pursuant to 28 U.S.C. § 1782 have been unsuccessful." No. 23-1481, D.I. 19 at 1 (internal quotation marks and citation

3

omitted). Financialright further informed me that day that it "intend[ed] to supplement its Application with additional discovery requests" and that it "intend[ed] to provide an advance copy of those requests to [the Burford entities] . . . and [to] meet and confer with them in the hope of obtaining either their voluntary compliance or an agreement on a briefing schedule to present to the Court." No. 23-1481, D.I. 19 at 3.

Later that day, the Burford entities filed in the Section 1782 Action a Motion to Compel Arbitration and to Stay Further Proceedings Pending Arbitration. No. 23-1481, D.I. 20. On June 14, Financialright filed a "Stipulation and Proposed Order" for my signature that set a briefing schedule for the motion to compel arbitration. No. 23-1481, D.I. 29. The stipulation was "by and between the parties," No. 23-1481, D.I. 29 at 1, even though Financialright was the only party, as the Burford entities had not requested, and I had not granted them, leave to intervene in the Section 1782 Action. I signed the proposed order that day. No. 23-1481, D.I. 30.

On June 27, Financialright filed an answering brief in opposition to the Burford entities' motion to compel arbitration. No. 23-1481, D.I. 36. It argued among other things in its brief that "[e]ven were [Financialright's § 1782] Application covered by the CPA's arbitration agreement, [Financialright] was

4

fraudulently induced to enter into that arbitration agreement, and thus it is unenforceable." No. 23-1481, D.I. 36 at 2.

That same day, Financialright sued Burford Germany in the Superior Court of the State of Delaware. No. 24-929, D.I. 1-1 at 2. It asked in the Complaint in that case (the 929 Action) for a declaratory judgment that "(i) [Burford Germany] fraudulently induced [Financialright] into agreeing to the Arbitration Agreement; and (ii) as a result of [Burford Germany]'s fraud, the Arbitration Agreement is invalid and unenforceable." No. 24-929, D.I. 1-1 at 12.

On July 23, Burford Germany filed in Superior Court a motion to dismiss the case for lack of subject matter jurisdiction, or, in the alternative, to stay that action pending resolution of the Section 1782 Action (the Superior Court Motion). No. 24-929, D.I. 1-1 at 79–80. On August 9, Burford Germany exercised its right to remove the 929 Action from the Superior Court to this Court. *See* No. 24-929, D.I. 1. Neither party filed a motion in this Court in the ensuing four weeks. Then, on September 11, Financialright filed an "Opposition to Burford [Germany]'s Motion to Dismiss, or in the Alternative, to Stay Proceedings." No. 24-929, D.I. 12. A week later, on September 18, Burford Germany filed a "Reply Brief in Support of [Its] Motion to Dismiss, or in the Alternative, Stay." No. 24-929, D.I. 14.

At this point, I was thoroughly perplexed by the procedural posture of both the Section 1782 Action and the 929 Action. In my mind, there was no motion pending before me in the 929 Action for Financialright to oppose or Burford Germany to support. And I did not understand why I was being asked to resolve a dispute among four entities in an *ex parte* proceeding initiated by one of them in the Section 1782 Action. To try to sort things out, I held a joint hearing for both actions on November 1.

At the outset of the November 1 hearing, I explained that I had been prepared early in the year to rule on Financialright's § 1782 application when it filed its motion to stay; and that as a result of the motion to stay, Financialright's application had moved "to the bottom of the pile" of the hundreds of motions pending before me. No. 23-1481, 11.1.24 Hr'g Tr. (docketed as D.I. 49) 4:19–25. I then turned to "sort[ing] out what motions we have pending" and heard argument from the parties. No. 23-1481, 11.1 Tr. 6:6–7.

On November 18, I issued a Memorandum Opinion and Order in the Section 1782 Action, denying the Burford entities' motion to compel arbitration for lack of jurisdiction and granting Financialright's § 1782 application for permission to issue the requested subpoenas to the Burford entities. *See* No. 23-1481, D.I. 50; No. 23-1481, D.I. 51. I had expected that Financialright would immediately serve on the Burford entities the subpoenas and that either the Burford entities would

6

move to quash those subpoenas or Financialright would move to compel compliance with the subpoenas, thereby giving rise to a justiciable controversy over which I would have jurisdiction.  I was wrong.

Financialright did serve the subpoenas on the Burford entities the next day. *See* No. 23-1481, D.I. 53 at 3; No. 23-1481, D.I. 54 at 3; No. 23-1481, D.I. 55 at 3. But instead of moving to quash the subpoenas, the Burford entities filed that afternoon an appeal of the November 18 Order with the Third Circuit. No. 23-1481, D.I. 52.

On December 2, the Burford entities filed a motion to stay the Section 1782 Action pending the appeal of my November 18 Order.  No. 23-1481, D.I. 57. Because the Section 1782 Action was closed on November 18 and thus there were no proceedings to stay, I denied the motion as moot on January 13, 2025. No. 23-1481, D.I. 61 at 1.  On January 15, the Burford entities filed in the Third Circuit a motion to stay the Section 1782 Action pending appeal.  *See In re financialright claims GmbH*, No. 24-3171 (3d Cir. Jan. 15, 2025), D.I. 41.

While the appeal of the Section 1782 Action was pending, I turned my attention back to the 929 Action.  I held a hearing on December 10, 2024 and denied the Superior Court Motion without prejudice.  No. 24-929, 12.10 Tr. 35:15–16.  Financialright filed an Amended Complaint in the 929 Action on December 11, No. 24-929, D.I. 29, and Burford Germany filed a motion to compel

7

arbitration of that case on December 20, No. 24-929, D.I. 32. The parties completed briefing on that motion on January 10, 2025. *See* No. 24-929, D.I. 36. I started work on the motion, but on February 10, the Third Circuit scheduled oral argument in the appeal of the Section 1782 Action for March 4. No. 24-3171, D.I. 50. Accordingly, I decided to hold off in ruling on Burford Germany's motion to compel in the 929 Action. The Third Circuit held oral argument in the appeal of the Section 1782 Action on March 4 as scheduled. *See* No. 24-3171, D.I. 57. A week later, on March 11, the Third Circuit granted the Burford entities' motion to stay the Section 1782 Action pending the appeal. No. 24-3171, D.I. 58.

On August 11, I granted Burford Germany's motion to compel arbitration of the 929 Action and stayed that case pending completion of the arbitration. No. 24-929, D.I. 40. On August 25, Financialright filed a motion for reargument and/or reconsideration of my August 11 Order. No. 24-929, D.I. 41. I later denied Financialright's motion. No. 24-929, D.I. 45.

On October 22, a panel of the Third Circuit affirmed my decision in the Section 1782 Action to deny the Burford entities' motion to compel arbitration for lack of jurisdiction. *See In re financialright claims GmbH*, 2025 WL 2977513, at *8 (3d Cir. Oct. 22, 2025). The Burford entities petitioned for rehearing by the panel and then for rehearing by the Third Circuit sitting en banc. No. 24-3171,

8

D.I. 67. The Third Circuit denied those petitions, No. 24-3171, D.I. 75, and issued on January 16, 2026 its mandate to this Court, No. 23-1481, D.I. 64.

Almost a month later, on February 11, 2026, Financialright filed in the closed Section 1782 Action the motion to compel compliance with subpoenas now pending before me in this action. *See* No. 23-1481, D.I. 66. Because the filing of the motion in the Section 1782 Action violated the Court's Local Rules and its CM/ECF procedures, I ordered the Clerk of Court to open this miscellaneous action and to transfer the motion and the subsequent docket entries of the Section 1782 Action to this action. No. 23-1481, D.I. 85.

## II.

I turn first to Burford's motion. According to Burford, its seeks by the motion "to compel arbitration of (a) whether [Financialright]'s Section 1782 application was improvidently granted under *Intel* [*Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241 (2004)]; (b) whether the scope of the subpoenas are too broad; and (c) whether this Court can adjudicate [Financialright]'s motion to enforce its subpoenas." D.I. 20 at 3–4.

With respect to the first two issues, Burford is in effect asking me to consent to having a private arbitrator exercise appellate review of five orders issued by this Court—the order granting Financialright's § 1782 application and four subpoenas. (A subpoena is itself a court order. *Pennwalt Corp. v. Durand-Wayland, Inc.*,

9

708 F.2d 492, 494 n.5 (9th Cir. 1983) ("[A] subpoena duces tecum is itself a court order[.]"); *Vitalis v. Sun Constructors, Inc.*, 2020 WL 4912298, at *14 (D.V.I. Aug. 20, 2020) ("[A] subpoena is a valid court order."); *In re Subpoena to Creeden & Assocs., Inc.*, 2012 WL 4580841, at *2 (N.D. Ill. Sept. 28, 2012) ("[A] subpoena . . . is a command of the Court.").)  Burford cites no legal authority that allows for appellate review of a federal court order by a private party.  That is not surprising because federal court orders are "subject to review only by superior courts in the Article III hierarchy." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995); *see also id.* at 218 ("Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch."); *Hayburn's Case*, 2 U.S. 408, 410 (1792) (opinion of Iredell, J., and Sitgreaves, D.J.) ("[N]o decision of any court of the United States can, under any circumstances, . . . be liable to a revision, or even suspension, by the legislature itself, in whom no judicial power of any kind appears to be vested[.]"); *Chi. & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948) ("Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government.").  Since Congress itself cannot engage in appellate review of a federal court's decision, it cannot delegate that power to a private party through the Federal Arbitration Act (FAA).

10

With respect to the third issue, enforcement of a subpoena issued by a federal district court is also a power vested exclusively in the federal courts under the Constitution. *United States v. Trs. of Bos. Coll.*, 718 F.3d 13, 23 (1st Cir. 2013) ("[T]he enforcement of subpoenas is an inherent judicial function which, by virtue of the doctrine of separation of powers, cannot be constitutionally divested from the courts of the United States."); *see also In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 572 (9th Cir. 2011) ("The enforcement of a subpoena is an exercise of judicial power."). "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex parte Robinson*, 86 U.S. 505, 510 (1873); *see also Michaelson v. United States ex rel. Chicago, St. P., M. & O. Ry. Co.*, 266 U.S. 42, 65 (1924) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice."). And "while the exercise of the contempt power is subject to reasonable regulation, the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative,"

11

and the prosecution of contempt can only "proceed at the instigation of the court." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 799 (1987) (internal quotation marks and citation omitted). Because Congress cannot abrogate a federal court's power to enforce a subpoena, it cannot delegate that power to a private arbitrator. *Trs. of Bos. Coll.*, 718 F.3d at 23; *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 385 (8th Cir. 1994) (Arnold, C.J., concurring) ("[T]he Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt."); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 2015 WL 1442487, at *6 (S.D.N.Y. Mar. 27, 2015) ("[F]ederal courts alone, possess the inherent authority to enforce their judgments, and the FAA may not be construed to divest courts of their traditional powers to police their own orders[.]") (internal quotation marks and citations omitted).

Accordingly, I will deny Burford's motion to compel arbitration.

III.

I turn then to Financialright's motion to compel compliance with the subpoenas. Except for a single sentence in a footnote, Burford's brief in opposition to the motion is dedicated entirely to its argument that I should stay this action and require Financialright to arbitrate the motion. *See generally* D.I. 16. That sentence reads: "Respondents expressly reserve all objections to [Financialright]'s requests and subpoenas, including under 28 U.S.C. § 1782, the

12

*Intel* factors, the Federal Rules of Civil Procedure, and principles of relevance, proportionality, privilege, confidentiality, and applicable arbitral or contractual limitations." D.I. 16 at 15 n.8. Accordingly, Burford has forfeited all arguments that the subpoenas are not enforceable except for its argument that I should abstain from ruling on the motion and send it to an arbitrator. *See Kalu v. Spaulding*, 113 F.4th 311, 344 n.21 (3d Cir. 2024) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered forfeited[.]") (brackets and citation omitted). And since, for the reasons discussed above, I have rejected the latter argument, I will grant Financialright's motion to compel compliance.

IV.

For the reasons discussed above, I will deny Burford's motion to compel arbitration (D.I. 15) and grant Financialright's motion to compel compliance with the subpoenas (D.I. 2).

The Court will issue an Order consistent with this Memorandum Opinion.

13